We have three cases on the calendar this morning, a patent case from the District Court, a case from the Court of Federal Claims, and a government employee case from the Merit Systems Protection Board that is submitted only in the briefs, and the briefs will not be argued. The first case is Raymond Stauffer v. Brooks Brothers, et al., 2013-11-80. Mr. Stauffer. Good morning, Judge Lurie. May I reserve four minutes for rebuttal? Certainly. Thank you. Good morning, Judge Moore. Good morning, Judge Schall. I'm the plaintiff's appellant pro se, Ray Stauffer. May I again dissuade the court? The Constitution diffuses power, the better to secure liberty. Accordingly, I'm not here today to insist that any rule of law remain unchanged for my benefit. I'm here today to insist that the Constitution be obeyed for all of our benefits. In stark contrast, Brooks Brothers, the alleged criminal, is here today to insist that an unconstitutional, congressionally issued pardon be sustained for their benefit. Is this, have they violated a criminal code? No, but this court, I think... So why would you call them a criminal? Well, they've called me a bounty hunter and bounty hunters chase criminals. And this court, I believe, has stated that the false marking statute is a criminal statute. So if you think that rhetoric's a little over the top, I apologize for it. But the DOJ is here today to help Brooks Brothers achieve that goal. Well, but your, it's not just rhetoric. A lot of your argument, as I understand it, hinges, at least one of your arguments, on the notion that the lower court effectuated an improper pardon. Well, a pardon is something that seems to me is somewhat unique to criminal context. And so it's hard for me to understand how that argument applies here. Well, I believe that Congress effectuated a pardon, not the district court. I believe the district court should have realized that. Well, I think the district court came to the conclusion that Congress has the power to grant acts of general amnesty. And I don't believe that the Constitution... Why did they grant the act of general amnesty? I think they just changed the law. Well, the effect of the law is, in my opinion, a pardon. When candidate and later President Carter pardoned draft resistors during the Vietnam War era, he didn't sit down and write down the names of everybody that he granted that relief to, and neither does the content of this statute. It's a general statute that relieves people who have violated the law from the impact of that law. So it is, in my opinion, a pardon. There's no difference between the statute and the effect of a pardon. Neither Brooks Brothers, nor the DOJ, nor Judge Stein have been able to articulate a difference between the statute and a pardon. In fact, I think in the opinion, Judge Stein actually says that Congress has the power to pass acts of general amnesty. I don't see any difference between an act of general amnesty and a pardon. Also, the DOJ, as I said, is here to help sustain that pardon. Consistent with our respective oaths of office, this panel should join me in defending the Constitution by holding that New 292 is unconstitutional under each of the pardon, ex post facto, takings, and Seventh Amendment preservation clauses. A lot of those issues, in particular the Seventh Amendment issue, it seems like that was raised pretty late in the process, wasn't it? It's been argued by my adversaries that, well, first let me say, I haven't raised anything in my appeal that I did not raise before the district court. All of these issues were raised before the district court. Brooks Brothers and the DOJ have taken the position that certain of my arguments should be ignored and not reached because they were, for the first time, put into a reply brief. As this court knows, a reply brief is filed by a moving party in closing support of the moving party's motion. I didn't move to dismiss my complaint. This court ordered Judge Stein to address the merits of the case, including Brooks Brothers' motion, and instead of addressing the merits of the complaint, Judge Stein essentially exercised what I feel was a pocket veto of this court's mandate by holding it for a year until after the law was changed, prioritizing cases on his docket that had later filing dates and later filing numbers than my own case. And then instead of ruling on Brooks Brothers' motion, he brought on and granted his own motion. So I don't think that I'm the moving party, and I don't think that you should fail to reach any of my arguments because my brief may have been titled a reply brief. I didn't move to dismiss my complaint. I felt that Judge Stein moved to dismiss my complaint. With respect to my pardon argument, I first note that false marking is an offense against the United States. Article 2, Section 2, Clause 1 vests the President with the power to grant reprieves and pardons for offenses against the United States. New 292 is an unconstitutional, congressionally issued pardon, and its enactment therefore violates both the Founder's original intent— Mr. Talbot, what about the fact that the President signed the statute? I don't think that's an issue. If you look at the case of the United States v. Munoz-Flores, which was an origination case, I think the Supreme Court said quite clearly that the President's signature on a law doesn't turn, let's say, for example, a law that violated the First Amendment. The President's signature on the law doesn't necessarily make it a constitutional law. I'm sure that the— Mr. Talbot Well, the separation of powers issue is at the core of your pardon argument, if it will. That's the constitutional issue. Mr. Eberle I'm not arguing that this law wasn't passed bicamerally and presented to the President for signature. It was. Mr. Talbot No, aren't you saying that it violated separation of powers by taking, effectively exercising the power of a pardon, whereas only the President can do that? Mr. Eberle That's exactly what I'm saying. And just as the Supreme Court held in Boucher and in Buckley that Article 2's affirmative grant of law enforcement and appointments powers to the President precluded Congress from exercising similar powers, so too should this Court hold that Article 2's affirmative grant of pardon power to the President precludes Congress from exercising that power. Additionally, insofar as the President's pardon power is limited by the common law, in that, like the King's power, it cannot be used to vitiate an informer action after the that New 292 is not only a congressional exercise of the President's pardon power, but it's also an ultra-virus exercise of the President's pardon power. Mr. Talbot, don't you also lack standing because you're not a competitor? Mr. Talbot Well, no, I don't think that the statute says competitor. And I think that Congress is predominantly a lawyer's body, and we presume that our elected officials know the law, and that they also know the decisions of this Court. And the last time on a field before this Court, this Court interpreted the phrase, any person may sue, to mean just that. In this statute, the statute says, a person... Mr. Gould A person says a person who has suffered a competitive injury. Mr. Talbot Yes, sir. And I believe that I have a competitive injury. And bear with me for just a moment. I have a competitive injury in that I've purchased both falsely marked item, falsely marked bow ties, and non-falsely marked bow ties. On the non-falsely marked bow ties that I've purchased... Mr. Gould You're a consumer, not a competitor. Mr. Talbot I'm a consumer, yes. I'm a consumer. Mr. Gould Not a competitor of Brooks Brothers. Mr. Talbot But in Brooks v. Dunlop, which the Court relied upon, this Court didn't hold that the statute was restricted to competitors. And I don't think that the Court should hold now that it's restricted to the competitors. If the Court intended that only competitors would be able to sue... Mr. Gould In Dunlop, did the Court deal with that issue of competitors? Mr. Talbot No, they reached... In Dunlop, this Court reached only the due process and intellectual property issues. If Congress intended for only competitors to be able to sue, they would have easily said only competitors. Instead, they said a person, just like they said last time, any person. Ms. Baird Well, how have you suffered a competitive injury? Mr. Talbot Well, I'm a consumer of bow ties that are falsely marked, and I'm a consumer of other bow ties by other competitors that are not falsely marked. Ms. Baird Well, then maybe the person who has the non-falsely marked bow ties could bring a competitive injury claim, but I don't understand how your injury is a competitive injury. And what do you think that word means, then? You would like to read it out of the statute? Mr. Talbot No, I don't want to read it out of the statute, but I don't want this Court to read competitor into the statute as Judge Stein did. I have an injury. I first note that I'm a person. I've suffered a competitive injury as a result of the statute. Ms. Baird How? What is the competitive injury? Mr. Talbot Both this Court and Brooks Brothers have noted that injuries to competition occur each time a product is falsely marked, and I wholeheartedly agree... Ms. Baird For injuries to competition, but you don't have standing to bring a suit on behalf of those competitors. You only have a standing to bring a suit on behalf of your own personal injury. Mr. Talbot I believe that false marking is as inherently anti-competitive as price fixing... Ms. Baird Well, then bring an antitrust injury. Mr. Talbot ...as tied products. Well, I think what we should have here with regard to the interpretation of this statute is something equivalent to a per se injury as under the antitrust statutes. I purchased bow ties that were falsely marked and non-falsely marked, and the bow ties that I purchased that were non-falsely marked and didn't use the adjust-a-locks mechanism were more expensive than the falsely marked adjust-a-locks bow ties that Brooks Brothers sold me, and more expensive than those bow ties that Brooks Brothers made of record that were also falsely marked under the adjust-a-locks mechanism. With respect to coming back to the pardon issue, the DOJ has argued that New 292 does not violate the pardon clause because Parliament may have had the power to release the informer's interest even after the plaintiff commenced suit. However, they cite no aspect of the Constitution that vests any measure of pardon power in Congress, nor do they cite any aspect of the Constitution that divides the pardon power between the President and Congress. I think that the only possible construction of New 292 is one that suggests that there is a divided pardon power and that that portion of it that is possessed by Congress is greater than that portion of it that is possessed by the President. I think the statute is unconstitutional in both respects. As I said, the DOJ cites no aspect of the Constitution that vests any measure of pardon power in Congress, nor any aspect of the Constitution that divides the pardon power between the President and Congress. And similarly, they cite no judicial authority that directs that the scope of this non-existent congressional pardon power is to be gauged with reference to the powers of Parliament. That the King and Parliament may have shared the English pardon power does not translate to there being a divided pardon power under the United States Constitution. I see that the yellow light has come on. I would like to reserve time for rebuttal. We will save it for you. Thank you. Mr. Jed, you're going to take five minutes, and Mr. Baker, I think you're going to take 10. Mr. Baker, five.  Good morning, Your Honors. May it please the Court. Congress made two relevant changes to the patent QI-TAM provision, which are relevant to this case. First, Congress abolished the QI-TAM action. And second, Congress changed the substantive liability such that people are no longer liable for marking a product with its own patent number, where that patent has simply expired. Congress made clear that both of these changes are applicable to pending cases. Either of them independently is a basis for dismissing Mr. Stauffer's lawsuit. But he had a right that was wiped out, didn't he? I'm not sure that I would say that he had a right that was wiped out. He had a law— A right of recovery? Your Honor, to sort of conceptualize it as a right obviously builds a lot in, and so then I would point, Your Honor, for example, to this Court's Brooks decision. It's a right for the purposes of due process such that, you know, obviously a court couldn't, for example, just flip a coin to decide the outcome of a lawsuit. It's not a vested right such that the takings clause would apply. When someone files a lawsuit, obviously a risk that's built in is that the law may change or, of course, that they may lose the lawsuit. And that's been, I mean, the well-accepted law for hundreds of years, that if the law changes during the course of your lawsuit, your lawsuit ends. And, you know, to the extent that Mr. Stauffer may be trying to backdoor in some sort of a due process challenge, saying he has some kind of a right and it got taken away from him, that's something that I think this Court has already rejected in Brooks, and certainly every district court that has— What issues of his are waived for not having raised them below? In our view, all of his issues are waived with the exception of his pardon argument. And although his pardon argument maybe seems to have morphed a little bit between district court and between his briefs here, he did clearly raise the pardon argument in response to the order to show cause in the district court. So let me ask you one question. Just speaking theoretically, assume for the moment that a court were to agree with Mr. Stauffer's decision on constitutional, where in your view would that leave matters? The statute, the old statute, would still not be in place. How would things operate then? So there's actually a lot that's built into that hypothetical because in part it would depend on exactly on what basis the statute were struck down. So just, you know, for example, Mr. Stauffer's pardon argument, as I understand it, certainly as it was presented to the district court, as I think it was presented in his opening brief here, and really if I'm kind of following his reasoning, essentially what it means would just be that the portion of the statute that would be invalid would, I think, be the portion that makes the change in substantive liability applicable to pending cases invalid. Now, obviously, as we noted in our brief, there's then a question as to whether that would actually apply to a pending civil case or only to a pending criminal case. But just setting that aside, if that is the kind of scope of his pardon argument, then he still wouldn't have a KETAM action that could continue. In his reply brief, he seems to have said that his pardon argument actually applies also to Congress's having abolished the KETAM action. I don't quite understand how it is that the logic of his pardon argument gets there. But, I mean, you know, I suppose that if that were the case, that if you were right, that there's some as-applied constitutional problem with applying, I suppose, any of these changes to pending lawsuits. I mean, obviously, your Honor sort of raises the sort of strange aspect of remedy, like what law is it that would be right? Yeah, that's what I was getting at. Yeah, and I mean— It wouldn't spring—the statute that was repealed couldn't spring back into life. Well, you know, obviously, if the Court were interested in supplemental briefing, we could get into it. But I think that what would essentially happen is the statute, which got rid of the prior statute, would essentially no longer apply, at least with respect to this case. And so, I mean, in some sense, I guess it would, quote, unquote, spring back to life. Obviously, that just shows how sort of strange this is. And the fact that it's very weird to be asking these questions kind of shows how firmly entrenched it is that Congress can actually change the law and that those changes apply to pending cases, which has been accepted since the beginning of the Republic. Okay. Thank you. Unless the Court has any other questions. Thank you, Your Honor. No, we'll hear from Mr. Baker. Good morning. Let's look at this pardon argument and take it to the end of the argument. If Stauffer had recovered a judgment, a civil judgment, a civil penalty, could the President have pardoned Brooks Brothers? The answer is no. President has no power to grant a pardon of a civil remedy. Brooks Brothers' remedy would have been to come back here and make whatever arguments it could. Now, if there's no pardon at the end, there's certainly no pardon at the beginning. This is not a pardon power. This is simply decriminalized certain actions. And I don't see how you can argue it's a pardon. Brooks Brothers were not a criminal. I'm a trademark lawyer. I'm not a criminal lawyer. If this is a criminal statute, I'm in the wrong place. And I don't see how it could be a pardon. With regard to the quid cam, it's not a cause of action. It's not a right. It's a ticket into court. It's a procedural device. It's not something that Mr. Stauffer had a vested interest in. It's like a declaratory judgment action. It just gets you into court. Stauffer had no interest in anything until he got a judgment, and he didn't. And you can certainly see that in Brooks, where this court said, 292 applies to pending cases except those that have gone to judgment. This one has not gone to judgment. Now, if we take a look at 292, it's just kind of interesting that it's a bipartisan effort to get rid of a problem. And what happened was, nobody in Washington agrees on anything. But in this one, 89 senators voted for 292. Six said no. Nine said no. In the House, 304 voted for it, including 196 Republicans and 136 Republicans. But the vote in Congress isn't the issue. Well, it is. If it had been 51 or 49, it would have been the same thing. Yes, but were they acting irrationally? Were they acting irrationally when they did this? Well, all they needed was one rational reason to apply 292 to pending cases, and they had five. Look at the legislative history. One of the reasons was simply to reduce frivolous litigation expenses, burdening manufacturing and the government. Valid reason. Number two, 292 lacked the oversight that is typically in quid temps. There's no procedures. The government couldn't intervene. Yes, I don't really understand why you're arguing any of this. Rational basis was decided in Brooks v. Dunlop. I don't even understand any of this to be in front of our courts. Well, then the only issue is the pardon issue, and I don't see how it's a part. There's nothing to pardon. It came at the end. If it was a decision at the end, there would not have been a power to President Kudlow. Thank you, Mr. Baker. Mr. Stauffer has almost four minutes of rebuttal time. Thank you. Judge Moore, I agree with you. Just as Brooks Brothers did below, they bring a due process brief to a pardon-powered debate. By arguing that Congress had multiple rational legislative purposes for enacting 292, that argument's irrelevant to the issues at bar. The pardon clause is an affirmative grant of power to the President, which Congress cannot exercise. The ex post facto takings, preservation clauses, those reach separate restrictions on Congress's own powers. Brooks Brothers cites no case that supports the proposition that a or even multiple rational legislative purposes can be used by Congress as a license to exercise the President's exclusive pardon power, pass an ex post facto law. How exactly is this a pardon? They didn't eliminate causes of action for criminal acts, if they are criminal acts. They simply said you didn't have the right to bring it. But a competitor, if there is truly competitive injury here, then there is absolutely still the ability to bring Brooks Brothers into court for doing something sanctionable. It's just that you don't have the right to do it. Not for expired patents. Nobody can do it. Not me. Not the DOJ. Not anybody. Brooks Brothers got a pass. And they haven't been able to articulate how they didn't get a pass. If they had a patent, they didn't own the patent. But they marked their product with a patent that expired. And nobody can sue to recover the penalty. Not me, not the DOJ. So they got a complete walk on it. There's no difference between that and a pardon. That's exactly what happened. The DOJ tries to argue that these are well entrenched, they're well accepted. Nope. And Mr. Baker's right. I'm not a criminal attorney. But... So are you saying that the government doesn't have the right... So when the speed limit changes from 55 to 65, all the people that are driving 60 are doing something that was illegal before, but not illegal now. Does the government have the right to make that change? The government has the right to make prospective changes in the law. Congress does not have the right to retroactively forgive past offenses against the United States. Only the president has the right to do that. I'm confused. I think that Congress all the time changes laws and makes it retroactive. And so why isn't that the same thing here? Well, because the pardon power belongs exclusively to the... The DOJ has argued that it's very well entrenched, very well accepted. However, no criminal in their right mind is going to come into the well of the courtroom and argue that the congressional pardon that they just got is constitutionally infirm. I agree with Mr. Baker. If I was representing Brooks Brothers, I wouldn't come in and make that argument either. I'd be happy to accept my congressional pardon and not challenge its constitutionality. But only the president has the power to do what this statute does, which is to wipe out Brooks Brothers past liabilities for marking their products with expired patents. That's why it's a pardon. Mr. Stauber, just before we finish, you heard my discussion with Mr. Jett. Do you agree or disagree with him about what he said would be the end of the road consequences? Were we to agree with your argument? I'm challenging the entire statute, not just key... It's the whole effect of the statute. The president didn't issue a pardon. He can issue a pardon in this particular case. He can issue a pardon, however, with respect to any offense, criminal or civil. There's no distinction in the pardon clause. But just as the king could not pardon an underlying offense for a former action, neither can the president. I see that my time is up. I'd be more than happy to answer any other questions that the court has. Thank you, Mr. Stauber. I think we have your case basically taken under advisement.